OPINIONS OF THE SUPREME COURT OF OHIO
     The full texts of the opinions of the Supreme Court of
Ohio are being transmitted electronically beginning May 27,
1992, pursuant to a pilot project implemented by Chief Justice
Thomas J. Moyer.
     Please call any errors to the attention of the Reporter's
Office of the Supreme Court of Ohio.  Attention:  Walter S.
Kobalka, Reporter, or Deborah J. Barrett, Administrative
Assistant.  Tel.:  (614) 466-4961; in Ohio 1-800-826-9010.
Your comments on this pilot project are also welcome.
     NOTE:  Corrections may be made by the Supreme Court to the
full texts of the opinions after they have been released
electronically to the public.  The reader is therefore advised
to check the bound volumes of Ohio St.3d published by West
Publishing Company for the final versions of these opinions.
The advance sheets to Ohio St.3d will also contain the volume
and page numbers where the opinions will be found in the bound
volumes of the Ohio Official Reports.


The State ex rel. Beeler, Appellant, v. RCA Rubber Company;
Industrial Commission of Ohio, Appellee.
[Cite as State ex rel. Beeler v. RCA Rubber Co. (1994),
Ohio St.3d      .]
Workers' compensation -- Denial of occupational disease claim
     -- Cause returned to Industrial Commission for
     clarification and an amended order, when.
     (No. 93-1572 -- Submitted August 17, 1994 -- Decided
October 19, 1994.)
     Appeal from the Court of Appeals for Franklin County, No.
92AP-316.
     In early 1987, appellant-claimant, William A. Beeler,
filed an occupational disease claim with the Ohio Bureau of
Workers' Compensation.  Claimant alleged skin conditions
arising from his employment with RCA Rubber Company and claimed
that he had not worked since April 15, 1985.  He submitted two
reports from Dr. James S. Taylor, head of the Section of
Industrial Dermatology at the Cleveland Clinic Foundation.  The
first, dated April 1, 1985, stated that "[a]t the present time
his dermatitis is probably not occupational in nature * * *."
In a June 18, 1987 follow-up, Dr. Taylor reiterated that "[m]y
impression essentially remains that which I stated previously."
     Continuing, he wrote:
     "In that letter [April 1, 1985], I basically hedged,
stating that his generalized dermatitis was nummular eczema
which is usually endogenously caused.  However, I pointed out
that he had significant positive patch tests to fragrances and
to a formaldehyde-releasing perservative [sic] (Quaternium 15)
which could partially be related to his work.  I never did hear
whether any of these substances were present in a workplace. *
* * The fact that his dermatitis is 75% better points to a work
relationship.  On the other hand, the fact that he has some
persistent residual two years after leaving the workplace could
suggest an unoccupational [sic] relationship."
     Dr. Schield M. Wikas examined claimant on February 2, 1985
and February 9, 1985.  The undated letter generated by those
examinations linked claimant's skin condition to his job.  He
stated that "when left unchecked" the condition "can lead to

disability."  Dr. Wikas did not, however, comment on the claimant's ability to work.  Dr. Wikas's April 8, 1985 letter reaffirmed the causal relationship.  Again, no comment was made on claimant's ability to work.

On July 21, 1987, a district hearing officer for the Industrial Commission, appellee, allowed the claim for "eczematous dermatitis."  Medical bills were ordered paid and temporary total disability compensation awarded from April 16, 1985 through July 15, 1987 and to continue, based on the reports of Drs. Wikas, Tang, Taylor, and Murphy.  On November 25, 1987, a regional board of review modified the district hearing officer's order.  While the allowance was sustained, the order for temporary total disability compensation was reversed "as medical in file does not support payment of compensation."

On March 3, 1988, Dr. Wikas answered the following interrogatories in the affirmative:

"As a result of this Ex/Dermatitis, was [claimant] removed from the work environment on, or about, April 15, 1985?

"* * *

"Would you, therefore, agree that Mr. Beeler was temporarily, and totally, unable to resume his former position of employment due to the Ex/Dermatitis from 4/15/85 to, at least, his date of normal retirement, July, 1987?"

Staff hearing officers affirmed the board without comment on April 19, 1988.  After unsuccessfully moving for reconsideration, claimant appealed to the Summit County Common Pleas Court.  The employer responded with a motion to dismiss, claiming that the trial court lacked subject matter jurisdiction.

Ruling on the dismissal motion, the trial court held in part:

"While Plaintiff has technically been allowed to participate in the fund, he has not been given any compensation.  This is clearly an anomalous situation.  The right to participate is meaningless when participation is, in fact, denied.

"The power of the courts to reverse and vacate decisions of the Commission includes the power to remand the case to the Commission for further proceedings. * * *

"Therefore, it is ORDERED that the case is reversed and remanded to the Industrial Commission for further proceedings."  (Citation omitted.)

The employer appealed.

It appears that the commission was not immediately aware of the employer's appeal since, four weeks later, staff hearing officers, pursuant to the common pleas order, issued a "supplemental order" that awarded temporary total disability compensation from April 16, 1985 to May 13, 1985 but denied temporary total disability compensation thereafter, finding Dr. Wikas's answers to interrogatories to be unpersuasive. Claimant and employer both sought reconsideration.

Claimant moved to dismiss RCA's appeal from the order of the common pleas court, arguing that the order was not a final appealable one.  Rejecting that argument, the appellate court wrote:

"In [the] case at bar, the trial court not only overruled

the rubber company's motion to dismiss but it granted judgment in favor of William Beeler.  Under R.C. 2505.02, the order determined the action by the [sic] deciding the case on its merits.  Therefore, we find that the order of November 30, 1988, is a final order."

Latching onto the appellate court's statement that the trial court had "granted judgment in [his] favor," claimant, citing R.C. 4123.519, moved the commission to pay temporary total compensation pursuant to the original district hearing officers' order.  The appellate court, in the meantime, reversed the trial court, finding that the disputed commission order indeed involved extent of disability and was not appealable, Beeler v. R.C.A. Rubber Co. (1989), 63 Ohio App.3d 174, 578 N.E.2d 496.  On remand, the common pleas court dismissed claimant's complaint.

On August 16, 1989, the commission vacated the staff hearing officers' supplemental order.  Claimant then filed a complaint in mandamus in the  Court of Appeals for Franklin County, seeking to compel the commission to order payment of compensation from May 14, 1985 through July 1, 1987.  The appellate court denied the writ, finding that the trial court's order had merely remanded the cause to the commission and had not ordered the commission to award compensation.  Accordingly, claimant was held to have no right to compensation under R.C. 4123.519(F) or (G).  The court also noted the lack of "some evidence" supporting such an award.

This cause is now before this court upon an appeal as of right.

William B. Nye and George D. Mallo, for appellant.
Lee Fisher, Attorney General, Michael O'Grady and Diane M. Meftah, Assistant Attorneys General, for appellee.

Per Curiam.  Claimant demands temporary total disability compensation from May 14, 1985 through July 1, 1987 on two grounds: (1) the order of the common pleas court, and (2) a lack of evidence supporting the denials of compensation by the regional board and staff hearing officers.  For the reasons to follow, the cause is returned to the commission for clarification and an amended order.

Claimant initially argues that the order of the common pleas court mandated payment, and that therefore compensation should have been paid, regardless of the appellate court's reversal, pursuant to R.C. 4123.519(F) and (G).  We disagree.  Had the lower court indeed intended payment pursuant to the earlier order of the district hearing officer, it would not have remanded the cause for further commission proceedings.

Claimant alternatively challenges the evidentiary sufficiency of the orders denying him temporary total disability compensation.  Finding our review hampered by vagueness in the commission's orders, we return the cause to the commission for clarification and amended order.  In affirming the board's order without comment, the staff hearing officers on April 19, 1988 inherently adopted the board's reasoning.  State ex rel. DeMint v. Indus. Comm. (1990), 49 Ohio St.3d 19, 550 N.E.2d 174.  With the vacation of the supplemental staff hearing officers' order and the silence of

the commission on temporary total compensation over the relevant period, we view the April 19, 1988 staff hearing officers' order as the definitive commission order on that issue.

Preliminarily, we find that the board's lack of citation to specific medical evidence relied on does not, as claimant alleges, violate State ex rel. Mitchell v. Robbins & Myers, Inc. (1983), 6 Ohio St.3d 481, 6 OBR 531, 453 N.E.2d 721. As the appellate court aptly observed, the board could not "have specified the medical evidence relied upon when it was [its] finding that there was insufficient evidence to support the payment of temporary total disability compensation." An order cannot identify the evidence "relied on" when the finding is based on a lack of evidence on which to rely.

Analysis of the board's and staff hearing officers' denials is, however, hindered by the vague reasoning stated therein -- "medical in file does not support payment of compensation."

The difficulty with the board's -- and vicariously, the staff hearing officers' -- reasoning is its susceptibility to different interpretations, which stems from the board's failure to identify which prerequisite to temporary total compensation was not supported by the medical evidence. Dr. Taylor, for example, refers to claimant's condition as a "permanent problem." The board may, therefore, have interpreted the evidence as failing to support the prerequisite of "temporariness." It is also possible that the board concluded that work amenability was the unsubstantiated element since, at least at the time of the board's order, none of the evidence addressed claimant's ability to perform his former duties.

This lack of clarity makes it impossible to evaluate the evidentiary adequacy of the staff hearing officers' order. Unlike the board, staff hearing officers had Dr. Wikas's interrogatories, which could affect the validity of the board's reasoning, inherently adopted by the staff hearing officers in their April 19, 1988 order. For example, if the rationale was permanency, the interrogatories would not undermine that rationale, since Wikas is silent on this element. On the other hand, if the board denied temporary total because no evidence addressed claimant's ability to work, the staff hearing officers' adoption of that reasoning is suspect, since Wikas expressly discussed that issue. Clarification of the orders' underlying rationale is, therefore, critical.

For these reasons, the judgment of the appellate court is reversed and the cause is returned to the commission for clarification and an amended order.

                                        Judgment reversed
                                        and cause returned.

Moyer, C.J., A.W. Sweeney, Douglas, Wright, Resnick, F.E. Sweeney and Pfeifer, JJ., concur.